No. DA 06-0127

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 143N

IN THE MATTER OF CUSTODY and
PARENTAL RIGHTS OF K.M.,

     Youth in Need of Care.

APPEAL FROM:    The District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDN 2005-12,
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jeremy Gersovitz, Chris J. Lindsey, Assistant Public Defenders,
Helena, Montana (Attorneys for Appellant father)

    For Respondent:

        Hon. Mike McGrath, Montana Attorney General, Jennifer Anders,
Assistant Attorney General, Helena, Montana; Carolyn Clemens,
Deputy County Attorney, Helena, Montana

    For Youth:

        Allen Lanning, Conklin, Nybo & Lanning, P.C., Great Falls, Montana
Guardian ad litem

Submitted on Briefs:  June 7, 2006

Decided:  June 27, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 T.M. appeals the termination of his parental rights. We affirm.

¶3 T.M. is the biological father of K.M., a special needs child born in 1998. In 2003, T.M. was convicted of felony sexual assault involving the 12-year old daughter of his then girlfriend. He was sentenced to eight years at Montana State Prison in November 2003, with four years suspended. In February 2004, K.M.'s mother, with whom K.M. resided, was arrested on drug charges. In March 2004, the Department of Public Health and Human Services (the Department) filed a Petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Temporary Legal Custody. K.M. was then placed with his maternal grandmother, with whom he has lived since that time. K.M.'s mother's parental rights are not at issue in this case.

¶4 On April 28, 2004, both parents stipulated at the adjudicatory hearing that K.M. was a "youth in need of care." The Department sought and obtained temporary legal custody over K.M. and approved treatment plans for the parents. On August 5, 2005, shortly after the case was transferred from Cascade County to the First Judicial District Court, the court held a review hearing. The court continued the Department's temporary custody for another six

2

months. On October 13, 2005, the Department filed a petition for termination of T.M.'s parental rights requesting that permanent legal custody of K.M. be awarded to the Department with the right to consent to adoption or guardianship. The District Court held a hearing on the petition on November 8, 2005.

¶5 In its November 29, 2005 Findings of Fact, Conclusions of Law and Order, the court acknowledged that T.M. had made progress on the terms and conditions of his treatment plan but noted that T.M. would not be able to complete the plan for several years because of the restrictions placed on him while incarcerated and once released from prison. Several witnesses presented the following examples of obstacles T.M. will face once released from prison that will affect his attempt to reestablish a relationship with K.M.: 1) six months to four years in pre-release in Missoula during which K.M., who lives in Helena, could not live with him or have unsupervised visits; 2) two to three years to complete Phase II of the sexual offender treatment program; and 3) the sentencing order provision restricting T.M.'s contact with anyone under the age of 18.

¶6 Based on substantial evidence, the District Court also determined that K.M. required intensive therapy to address his emotional disorders, including reactive attachment disorder and post-traumatic stress disorder, and that immediate permanent placement would be in K.M.'s best interests. The court noted that K.M. will be a challenging child to raise based in large part upon his very unstable early childhood. The court heard testimony from child social workers that K.M. requires a parent with good, if not exceptional, parenting skills to help him overcome his emotional difficulties.

3

¶7 Relying upon § 41-3-609(2)(c) and (d), MCA, the District Court, considering all the evidence presented, concluded that T.M.'s treatment plan had not been fully complied with and had not been successful and that the conduct and condition that makes T.M. unfit and unable to parent K.M. is unlikely to change within a reasonable time.

¶8 Section 41-3-609, MCA, provides:

> (1) The court may order a termination of the parent-child legal relationship upon a finding established by clear and convincing evidence . . . that any of the following circumstances exist:
> (f) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.
> (2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time . . . . In making the determinations, the court shall consider but is not limited to the following:
> . . .
> (c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and
> (d) present judicially ordered long-term confinement of the parent.

¶9 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." However, because a parent's right to the care and custody of a child is a fundamental liberty interest, it must be protected by fundamentally fair procedures. To satisfy the relevant statutory requirements for terminating a parent-child relationship, a district court must make specific factual findings. We review those findings

4

of fact to determine whether they are clearly erroneous. Lastly, we review the court's conclusions of law to determine whether the court interpreted the law correctly. *In re Custody and Parental Rights of C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, ¶ 13, 109 P.3d 232, ¶ 13 (internal citations omitted).

¶10 Additionally, the district court is bound to give primary consideration to the physical, mental and emotional conditions and needs of the children. Consequently, the best interests of the child are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights. Section 41-3-609(3), MCA. *Parental Rights of C.J.K.*, ¶ 14.

¶11 We have determined to decide this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the face of the briefs and the record before us that the appeal is without merit because the findings of fact are supported by substantial evidence, the legal issues are clearly controlled by settled Montana law which the District Court correctly interpreted, and the record supports the District Court's conclusion to terminate T.M.'s parental rights. The District Court did not abuse its discretion.

¶12   We affirm.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS